## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLAN LESLIE SINANAN, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 23-2442** |
| | : | |
| **CHILDREN, YOUTH & FAMILY** | : | |
| **DIVISION, COUNTY OF** | : | |
| **NORTHAMPTON, GOVERNMENT** | : | |
| **AGENCY, et al.** | : | |

### MEMORANDUM

**CHIEF JUDGE JUAN R. SÁNCHEZ**                          **JANUARY 26, 2024**

Pro se Plaintiff Allan Leslie Sinanan, Jr., a prisoner currently incarcerated at SCI Albion, seeks to file an amended complaint asserting due process claims pursuant to 42 U.S.C. § 1983 against the Northampton County Children, Youth & Family Division, as well as various individuals involved in the state court dependency proceedings for his minor child, B.C. The Court will grant Sinanan's motion, file the Amended Complaint, and dismiss it with prejudice for the following reasons. Defendants the Honorable Jennifer R. Slevtold, Syzane Arijaf, Esq., Henry Newton, Esq., Kelseigh Wiltraut, and Michael Ondilla, Esq. are each entitled to immunity from this suit. Defendants Michelle Maynard, Lisa Spitale, Esq., Brian Lawser, Esq., and Ewalde Cook, Esq., are not state actors subject to suit under 42 U.S.C. § 1983. As to Defendants Laura Gibet, Lisa Gengaro, Shannon Lehr, and Sandra Jones, Sinanan fails to state a claim against them for due process violations. Finally, Sinanan failed to state a *Monell* claim against the Northampton County Children, Youth & Family Division based on a policy or custom. Accordingly, the Court will dismiss the Amended Complaint with prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1) and (b)(2).

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Sinanan initiated this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights in connection with a child dependency matter in the Court of Common Pleas

of Northampton County concerning his minor child, B.C.  In the initial Complaint, Sinanan named as Defendants the Children, Youth and Families Division of the Northampton County Department of Human Services ("CY&F"), as well as the following nine individuals: Laura Gibet, Kelseigh Wiltraut, Lisa Gengaro, Henry Newton, Esq., Ewalde Cook, Esq., Lisa Spitale, Esq., Michael Ondilla, Esq., Brian Lawser, Esq., and Michelle Maynard.  (ECF No. 1 at 5-6, 15.)[1]  By Memorandum and Order dated August 3, 2023, the Court dismissed Sinanan's request for injunctive relief without prejudice pursuant to the abstention doctrine of *Younger v. Harris*, 401 U.S. 36 (1971).  (*See* ECF Nos. 10, 11.)  Further, Sinanan's request for damages was stayed until the related state court proceedings were resolved.  (*Id.*)  Sinanan was instructed to notify the Court within thirty days of the resolution of the state court matter and to advise whether he intended to pursue his claims at that time.  (*Id.*)

In a Notice filed with the Court on December 14, 2023, Sinanan represented that the state court custody case had been resolved, as the child was returned to her mother.  (ECF No. 17.)  He also filed the pending motion to amend his Complaint, along with the proposed Amended Complaint, a brief in support thereof, and exhibits.  (ECF No. 18.)[2]

In the Amended Complaint, Sinanan names as Defendants the Children, Youth and Families Division of the Northampton County Department of Human Services ("CY&F"), as well as the following thirteen individuals: Laura Gibet, Supervisor (CY&F); Kelseigh Wiltraut, Caseworker (CY&F); Lisa Gengaro, Caseworker (CY&F); Henry Newton, Esq., guardian ad litem; Ewalde Cook, Esq.; Lisa Spitale, Esq.; Michael Ondilla, Esq., Agency Attorney (CY&F); Brian Lawser, Esq., Counsel for Child (CY&F); Michelle Maynard, non-relative placement

---

[1] The Court adopts the continuous pagination assigned to Sinanan's submissions by the CM/ECF docketing system.

[2] The Court will deem the entire submission as constituting the Amended Complaint.

resource; Syzane Arifaj, Esq., Dependency Hearing Officer, Northampton County Court of Common Pleas, Juvenile Division; Shannon Lehr, Caseworker (CY&F); Sandra Jones, Caseworker (CY&F); and the Honorable Jennifer R. Sletvold, Northampton County Court of Common Pleas, Juvenile Division.[3]  Defendants are sued in their individual and official capacities.

Sinanan alleges that his First, Fourth, and Fourteenth Amendment rights were violated, as well as his rights under the Pennsylvania Constitution in connection with the dependency proceeding.  (Am. Compl. at 15.)  He claims that "the defendants" violated these rights for the purpose of hindering his liberty interest in the companionship of his daughter.  (*Id.*)

According to the allegations of the Amended Complaint and supporting documentation, B.C., who had been in the custody of her mother Erin Corkins, was taken into the custody of CY&F on March 13, 2023, pursuant to an Order of Emergency Protective Custody.  (*Id.* at 19.)  Sinanan, who is incarcerated, was made aware when he received three letters from CY&F on March 23, 2023.  (*Id.*)  Sinanan alleges that Defendant Wiltraut, a CY&F caseworker, "is responsible for predating" the letters, which were dated March 13, March 15, and March 20, but were not mailed until March 21.  (*Id.* at 16, 19.)[4]  According to Sinanan, this short notice deprived him of his right to due process to respond to time-sensitive mail.  (*Id.* at 19-20.)  He avers that he "mailed out a

---

[3] In the exhibits to the Amended Complaint, Ewalde Cook, Esquire, is identified as the attorney for the child's mother, Erin Corkins, and Lisa Spitale, Esquire, is identified as counsel who was appointed for Sinanan at the initiation of the dependency proceedings.  (*See* Am. Compl. at 51.)

[4] The three letters are attached as Exhibit A to the Amended Complaint.  (*See* Am. Compl. at 30-34.)  The March 13, 2023 letter from CY&F to Sinanan invites him to participate in service planning for B.C.  (*Id.* at 30.)  The March 15, 2023 letter from CY&F to Sinanan informs him that an assessment had been conducted and that the family had been accepted for ongoing services from CY&F and that the custodial parent could appeal this determination.  (*Id.* at 31.)  The March 20, 2023 letter from CY&F to Sinanan informs him that it was determined during an assessment that the child's basic needs were not being met due to the concerns of homelessness and substance use by the parent/caregiver, and that an Emergency Order was filed giving CY&F custody of the child.  (*Id.* at 34.)

request for disclosure and transparency into the matter" on March 23.  (*Id.* at 19.)  On March 27, he received notice of a hearing, scheduled for March 30, for adjudication of dependency.  (*Id.*) That same day, he mailed a motion requesting that the hearing be held before a judge rather than a hearing officer.  (*Id.* at 20.)

The dependency hearing was conducted on March 30, 2023, before Dependency Hearing Officer Arifaj, with Sinanan participating by telephone.[5]  (*Id.*)  Sinanan was provided counsel for the hearing, although he had not spoken with her prior to the hearing.  (*Id.*)  He claims that his counsel was ineffective because she failed to object as he wished, and as a result, B.C. was found dependent.  (*Id.* at 20-22.)  Sinanan alleges that had his counsel provided effective assistance, B.C. "would be with family or Mr. Sinanan's fiancée in Mr. Sinanan's home where the child has her own room, and it is more likely than not that the results of the hearing would have been different." (*Id.* at 22.)  He further claims that he was denied an opportunity to address the alleged violations at the hearing.  (*Id.* at 23.)  According to Sinanan, Defendants Wiltraut, Newton, Cook, Spitale, Ondilla, Lawser, and Hearing Officer Arifaj "found BC dependent and denied [Sinanan] access to BC without probable cause or clear and convincing evidence of dependency."  (*Id.* at 16.)

On April 3, 2023, Sinanan filed three motions with the state court.  (*Id.* at 23.)  The first sought to waive his right to counsel so that he could proceed *pro se* in the dependency matter.  (*Id.*) The second requested a re-hearing before a judge rather than a hearing officer, and the third requested a copy of the transcript of the March 30 hearing.  (*Id.*)  Because he received no response

---

[5] The exhibits include a transcript of the March 30, 2023 hearing, as well as transcripts of hearings held on June 20, 2023 and August 3, 2023.  (*See* Am. Compl. at 50-87 (Exh. E, transcript of March 30, 2023 hearing); *id.* at 89-126 (Exh. I, transcript of June 20, 2023 hearing); Am. Compl. at 128-157 (Exh. J, transcript of August 3, 2023 hearing).)

to his motions, Sinanan filed another motion with the state court on May 31, 2023, alleging due process violations.  (*Id.* at 23.)[6]

Sinanan also claims that various Defendants have acted intentionally to deny him access to mailings from CY&F regarding the dependency matter.  (*See generally id.* at 15-24.)  He asserts that time-sensitive mail was returned to sender, resulting in inadequate notice and denying him an opportunity to be heard.[7]

Sinanan takes issue with certain aspects of B.C.'s placement during dependency.   For example, he claims that his parental rights have been "sanctioned" because, *inter alia*, he did not have a say in where his child was placed and did not have visitation and contact with his child for over 200 days, and when there was contact, it was with restrictions.  (*Id.* at 16, 24-25.)  He claims that Judge Sletvold has "allowed these sanctions to be executed."  (*Id.* at 16.)  He further asserts that Defendants Gibet, Gengaro, Lehr, and Jones acted to deny Sinanan contact with B.C.  (*Id.*) As alleged, "[t]hey have threaten[ed] the plaintiff and BC that if we were to talk we would never see each other again.  Specifically, BC was able to advise Carmen Gonzalez (Family) that both Michelle Maynard and Lisa Gengaro told BC if she is found to be talking to either her father or Carmen 'she will never see her dad.'"  (*Id.*)  Sinanan also claims that Defendant Lehr advised him

---

[6] Sinanan provided an index of exhibits to the Amended Complaint.  (*See* Am. Compl. at 17.) While Exhibits F, G, and H are included in the index, they were not attached to the Amended Complaint.  Exhibit G is identified in the index as the May 31, 2023 motion that Sinanan filed with the state court.  (*See id.* at 23.)

[7] Sinanan alleged at the June 20, 2023 hearing before Judge Sletvold that CY&F intentionally failed to properly code the mail sent to him at SCI Albion in accordance with the prison's procedures, and as a result, the mail was returned to sender.  (Am. Compl. at 110.)  He asserted that his rights were violated because the mail did not reach him.  (*Id.*)  Judge Sletvold indicated at the hearing that she would direct CY&F to follow all Department of Corrections mailing procedures.  (*Id.*)  At the August 3, 2023 hearing, Sinanan again asserted that he continued to have problems receiving some mail from CY&F due to improper coding.  (*See id.* at 153-56.)  Judge Sletvold again indicated that she would direct CY&F to make sure that Sinanan properly received his mail.  (*Id.* at 156.)

during a July 6, 2023 teleconference that he had no right to have a say in his child's placement or to know where B.C. was living, as well as no right to visitation with, or access to, B.C. (*Id.*) According to Sinanan, B.C. was placed in foster care even though he informed CY&F of possible resources for B.C.'s placement, including his fiancée. (*Id.* at 25.) As relief for his claims, Sinanan seeks $30 million in monetary damages. (*Id.* at 6.)

## II.   STANDARD OF REVIEW

Although Sinanan has paid the filing fee in full, the Court is still obligated to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A, which requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (*per curiam*); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*,

792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Sinanan is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

To the extent that Sinanan seeks to present claims based on injuries to B.C., or on behalf of B.C., he may not do so.  (*See Am. Compl.* at 17 ("These defendant[s] have violated the plaintiff's and the child's civil rights unabated to the point where it seemed normal for them to be doing this and that's where the public should be concerned."); *see also id.* at 26-27 (discussing the Fourth Amendment rights of the child).)  First, Sinanan lacks standing to present claims based on any injuries suffered by B.C.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party." (quotations omitted)); *Howard v. Chester Cnty. Off. of Juv. Prob. & Parole*, 365 F. Supp. 3d 562, 571 (E.D. Pa. 2019) ("In general injuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing.") (internal quotations and citations omitted), *aff'd*, No. 19-1697, 2019 WL 13131142 (3d Cir. Nov. 27, 2019).  Second, to the extent Sinanan asserts claims on behalf of his child, such claims must be dismissed.  While Sinanan may pursue his own claims as a self-represented litigant, he may not represent his child in federal court because he is not an attorney.  *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *see also Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court."); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll.*

*of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

Regarding the claims Sinanan presents on his own behalf, such claims are brought pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, the Court understands Sinanan to assert due process claims based on alleged violations of his rights during the dependency proceedings.[8] Nonetheless, liberally construing the Amended Complaint as this Court must, Sinanan has not alleged a plausible basis for his claims against any named Defendant.

---

[8] Sinanan references other legal terms, including "equal protection" and "First Amendment" when describing his claims. (*See, e.g.,* Am. Compl. at 15.) Such passing references are not sufficient to raise plausible claims. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018). Additionally, to the extent that the Amended Complaint purports to bring claims under the Pennsylvania Constitution, there is no private right of action for damages under the Pennsylvania Constitution. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

A.      **Claims Against Judge Sletvold, Dependency Hearing Officer Arifaj, and Henry Newton, Esq., Guardian ad Litem**

Sinanan's claims against the Honorable Jennifer R. Sletvold of the Northampton County Court of Common Pleas, Juvenile Division, Syzane Arifaj, Esq., Dependency Hearing Officer of the Northampton County Court of Common Pleas, Juvenile Division, and Henry Newton, Esq., guardian ad litem, are barred and must be dismissed because each is entitled to immunity on such claims. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)); *accord Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Capogrosso*, 588 F.3d at 184 (citations omitted). Moreover, "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and ex parte' manner', . . . [or] because the judge's action is 'unfair' or controversial." *Gallas*, 211 F.3d at 769 (citations omitted). A judge will be subject to liability only "when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356-57). "Generally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Sinanan's allegations against Judge Sletvold arise from judicial determinations she made in dependency proceedings in the Northampton County Court of Common Pleas, Juvenile Division. Sinanan has not alleged any facts that would show that Judge Sletvold acted in the

absence of jurisdiction.  Accordingly, Sinanan's claims against her are barred by judicial immunity and will be dismissed.  *See Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (finding judges who presided over protection from abuse, custody, and divorce proceedings were entitled to immunity because acts were taken in judicial capacity and plaintiff did not show an absence of jurisdiction, and immunity applied despite allegations of bad faith and conspiracy), *aff'd*, 572 F. App'x 68 (3d Cir. 2014).

Sinanan's claims against Hearing Officer Arifaj also arise from judicial determinations she made during the dependency proceedings in the Northampton County Court of Common Pleas, Juvenile Division.  They are thus barred and must be dismissed because Arifaj is entitled to quasi-judicial immunity.  *See Baquero v. Mendoza*, 828 F. App'x 137, 140 (3d Cir. 2020) (*per curiam*) (affirming finding that child support hearing officer was entitled to quasi-judicial immunity for his role in implementing and enforcing child support orders); *Little v. Hammond*, 744 F. App'x 748, 751 (3d Cir. 2018) (*per curiam*) (affirming finding that presiding hearing officer was entitled to immunity on § 1983 damages claims for actions taken while conducting proceedings as a hearing officer assigned to the child custody case).

Sinanan also alleges that Defendant Newton violated his due process rights when acting as guardian ad litem in the state court proceedings that altered the custody arrangement of B.C. However, a guardian ad litem is absolutely immune from § 1983 liability when acting as an "integral part of the judicial process."  *Gardner by Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) (internal citations and alterations omitted); *see also Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001) (holding that a guardian ad litem enjoys judicial immunity).  Such immunity applies to "exercising functions such as testifying in court, prosecuting custody or neglect petitions, and

making reports and recommendations to the court." *Id.*  Because the complained of actions were taken by Defendant Newton in his role as guardian ad litem during B.C.'s dependency proceedings, he is entitled to judicial immunity.  *See Rieco v. Hebe*, 633 F. App'x 567, 569 (3d Cir. 2015) (*per curiam*) (affirming dismissal of claims against guardian ad litem for her role in the state court proceeding that terminated parental rights).  Accordingly, Sinanan's § 1983 claims against Defendant Newton are barred and will be dismissed.

**B.    Claims Against Michelle Maynard, Attorney Spitale, Attorney Lawser, and Attorney Cook**

Sinanan cannot maintain his constitutional claims against Michelle Maynard because she is not a state actor for purposes of § 1983.  Maynard is identified in the Amended Complaint as B.C.'s godmother and the individual with whom B.C. was placed when she first was removed from her mother's custody.  (*See* Am. Compl. at 13, 44.) "Whether a defendant is acting under color of state law -- *i.e.*, whether the defendant is a state actor -- depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Maynard, B.C.'s godmother and temporary custodian, is not a state actor for purposes of Sinanan's § 1983 claims. *See Leshko*, 423 F.3d at 347 (holding foster parents in Pennsylvania are not state actors for purposes of liability under § 1983); *see also Medina v. Reich*, No. 22-3300, 2022 WL 16553389, at *3 (E.D. Pa. Oct. 31, 2022) (grandparents, who were awarded custody of the children by the state court, were private individuals who were not acting under color of state law). Additionally, Attorney Spitale, who was appointed as Sinanan's counsel for the dependency hearings, Attorney Lawser, who was appointed as B.C.'s counsel for the dependency hearings, and Attorney Cook, who was appointed as Corkins's counsel for the dependency proceedings, are not state actors for purposes of Sinanan's § 1983 claims against them. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (holding that a court-appointed public defender is not a state actor simply by virtue of being an officer of the court); *Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 33 (3d Cir. 2013) (*per curiam*) (court-appointed counsel who represented the plaintiff during his parental rights termination proceedings was not a state actor and thus was not a proper defendant under § 1983); *Muhammad v. Cappellini*, No. 10-2374, 2011 WL 3034393, at *4 (M.D. Pa. July 25, 2011) (court-appointed counsel for father during termination of parental rights proceedings was not a state actor for purpose of father's § 1983 claims).[9] Accordingly, Sinanan's claims against Defendants Maynard, Spitale, Lawser, and Cook will be dismissed for failure to state a claim.

## C.     Claims Against CY&F Employees

Sinanan claims that his rights were violated by several CY&F employees who have been involved in B.C.'s case. In particular, Sinanan alleges that Defendant Wiltraut "is responsible for pre-dating" three letters prior to the March 30, 2023 hearing, causing Sinanan to be denied his

---

[9] To the extent Sinanan seeks to assert that his Sixth Amendment rights were violated by Attorney Spitale in the dependency proceedings, (*see* Am. Compl. at 4), that claim also fails. The Sixth Amendment does not apply to civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011).

right to respond to the time-sensitive mail and resulting in a finding of dependency for B.C.  (Am. Compl. at 16.)  Sinanan also generally asserts that Defendants Gibet, Gengaro, Lehr, and Jones denied him contact with B.C. without probable cause, as well as denied his family and friends contact with B.C. without probable cause.  (*Id.*)  He claims that Carmen's phone number was blocked from B.C.'s phone so no contact could be made.  (*Id.*)  Additionally, Sinanan alleges that Defendant Lisa Gengaro told B.C. that if she were "found to be talking to either her father or Carmen 'she will never see her dad.'"  (*Id.*)  Defendant Lehr also is alleged to have advised Sinanan in a July 6, 2023 teleconference that, *inter alia*, he did not have a say in where his child is placed, visit with his child, or know where she was living.  (*Id.*)  He also appears to take issue with the restrictions that have been placed on him for the video meetings with B.C. in that the meetings are supervised, and various testing requirements that he would be subject to upon his release from prison.  (*Id.*)

In *Ernst v. Child & Youth Services of Chester County*, the United States Court of Appeals for the Third Circuit held that child welfare workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings" and that this includes "the formulation and presentation of recommendations to the court in the course of such proceedings."  108 F.3d 486, 495 (3d Cir. 1997).  The Circuit reasoned that:

> the functions performed by [child welfare workers] in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers.

*Id.*  The *Ernst* court further noted in *dicta* that it would be unwilling to accord absolute immunity to "investigative or administrative" actions taken by child welfare workers outside the context of a judicial proceeding.  *Id.* at 497 n.7.  The Third Circuit subsequently clarified that immunity would

apply to investigative actions that are taken as part of an ongoing judicial proceeding for which the child welfare worker serves as an advocate for the state. *See B.S. v. Somerset Cnty.*, 704 F.3d 250, 269-70 (3d Cir. 2013). "The key to the absolute immunity determination is . . . the underlying function that the investigation serves and the role the caseworker occupies in carrying it out." *Id.* at 270.

Here, Sinanan alleges that Defendant Wiltraut violated his rights by "pre-dating" mailings, resulting in adequate preparation time for him, and generally alleges that she participated in the proceedings during which B.C. was found dependent. (Am. Compl. at 16.) However, the conduct of which Sinanan complains clearly was done in preparation for dependency proceedings. Defendant Wiltraut participated in the initial assessment of the allegations concerning B.C., sought to contact Sinanan and inform him of the agency's process, and attempted to include him in the dependency proceedings that commenced in March 2023. (*See id.* at 30-32.) Thus, Defendant Wiltraut is entitled to immunity with respect to Sinanan's allegations that she violated his rights and the claims against her will be dismissed.

This absolute immunity also applies to attorneys who prosecute dependency proceedings on behalf of the state. *Ernst*, 108 F.3d at 488-89. Absolute immunity can "protect the attorney from liability flowing from prosecutorial actions, as long as the challenged acts were not those that a reasonable person would recognize as being clearly outside his jurisdiction." *B.S.*, 704 F.3d at 263 (quotations and alterations omitted). Sinanan alleges generally that Michael Ondilla, Esq., attorney for CY&F violated his constitutional rights during the dependency proceedings. (*See* Am. Compl. at 16.) As Ondilla's actions were clearly prosecutorial and taken in a case where he had jurisdiction to act, he is entitled to absolute immunity. Any claims against Defendant Ondilla are barred and must be dismissed.

Actions taken after the initiation of dependency proceedings may also be entitled to absolute immunity. *See generally Sporish v. Cnty. of Delaware, Pa.*, No. 12-6363, 2013 WL 5272832, at *8 (E.D. Pa. Sept. 18, 2013) (holding that agency employees who made phone calls that were arguably outside the dependency proceedings were entitled to immunity for those acts because the phone calls were made to prepare for dependency hearing); *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *8 (E.D. Pa. Dec. 8, 2020) (holding that caseworkers were absolutely immune on claim that false information was presented in the petition or at the hearing); *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, No. 15-6186, 2016 WL 2897470, at *4-5 (E.D. Pa. May 17, 2016) (holding that caseworkers were absolutely immune on claims of making false statements to the Juvenile Court and failing to follow agency policies and procedures in removing the child from mother's custody because alleged conduct "was related to initiating, preparing for, and prosecuting the dependency proceedings). While it is unclear from the face of the Amended Complaint how the functions that Gengaro, Lehr, Gibet, and Jones performed should properly be considered – prosecutorial, administrative, investigative, or something else, even if these Defendants are not entitled to immunity for the alleged acts, Sinanan has failed to allege a plausible due process violation against these Defendants.

### D.    Due Process Claims

The Fourteenth Amendment's Due Process Clause "prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *Croft v. Westmoreland Cnty. Children and Youth Servs.*, 103 F.3d 1123, 1125 (3d. 1997). To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*,

455 F.3d 225, 233-34 (3d Cir. 2006).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The Supreme Court has recognized that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).  However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children." *Croft*, 103 F.3d at 1125.

With respect to a substantive due process claim brought against a child welfare worker, the Third Circuit has explained that,

> a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'" [*Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir.1999)]; *see also Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1124-26 (3d Cir. 1997).  In so holding, we observed that "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," because a "higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks." *Miller*, 174 F.3d at 375.  In such situations, the "standard of culpability" necessary for a child welfare employee's actions to shock the conscience must generally "exceed both negligence and deliberate indifference." *Id.*

*B.S.*, 704 F.3d at 267-68.  Thus, to be plausible, a claim related to a social worker removing a child from a parent's custody "requires decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'" *Id.* at 268.  A plaintiff must allege that the government's actions "reach a level of gross negligence or arbitrariness." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013).

The Court understands Sinanan to assert substantive due process claims against Defendants Gengaro, Lehr, Gibet, and Jones for their actions after B.C. was removed from her mother's custody and determined to be dependent.  However, none of the alleged actions of these Defendants can be said to shock the conscience.  Sinanan broadly asserts that Defendants Gibet,

Gengaro, Lehr, and Jones denied him contact with B.C. without probable cause, as well as denied his family and friends contact with B.C. without probable cause. (Am. Compl. at 16.) He claims that Carmen's phone number was blocked from B.C.'s phone so no contact could be made. (*Id.*) Additionally, Sinanan alleges that Defendant Gengaro told B.C. that if she were "found to be talking to either her father or Carmen 'she will never see her dad.'" (*Id.*) Defendant Lehr also is alleged to have advised Sinanan in a July 6, 2023 teleconference that, *inter alia*, he did not have a right to say where his child is placed, visit with his child, or know where she was living. (*Id.*) He also appears to take issue with the restrictions that have been placed on him for the video conferences with B.C. and various drug-testing requirements that would be imposed after his release from prison. (*Id.*)

The alleged actions of Defendants Gengaro, Lehr, Gibet, and Jones simply do not rise to level of conscience-shocking behavior. *Compare B.S.*, 704 F.3d at 268 (finding child welfare employee's actions were not "free from fault" but could not "be said to shock the conscience" where employee misstated information to the court); *Hatfield v. Berube*, 714 F. App'x 99, 103 n.1 (3d Cir. 2017) (finding that child welfare caseworker's conduct did not "shock the conscience" even if her investigation into potential child abuse "was not thorough"); *Webb v. Columbia Cnty.*, No. 22-0292, 2023 WL 8936340, at *10 (M.D. Pa. Dec. 27, 2023) (finding that because the right to family integrity does not include a constitutional right to be free from child abuse investigations, the right to family integrity does not extend to a right to be free from drug testing which poses a far more attenuated burden upon parental rights, if any) *with Croft*, 103 F.3d at 1126-27 (the actions of caseworker who followed up on "six-fold hearsay report [of child abuse] by an anonymous informant," possessed no evidence of abuse, but threatened to remove the child from the home unless the father left, were found to "shock the conscience" because the information

available at the time did not create an objectively reasonable suspicion of abuse justifying the degree of interference with the parents' rights).[10]

The Amended Complaint read as a whole, including the documents Sinanan attached thereto such as the transcripts of the March 30, 2023, June 20, 2023, and August 3, 2023 hearings, sheds light on Defendants' actions.  B.C. was in the custody of her mother when the family was accepted for ongoing services with Northampton County CY&F, and after an assessment, it was determined that B.C.'s needs were not being met due to concerns of homelessness and substance use by her mother.  (Am. Compl. 30-31.)  During the agency's assessment, it was discovered that Sinanan was incarcerated at SCI Albion since being found guilty on multiple drug charges in 2017.[11]  (*Id.* at 54.)  After the March 30, 2023 hearing, an adjudication of dependency was entered, and it was determined that B.C. would remain with her godmother.  (*Id.* at 41, 62.)  Sinanan was present by telephone during the hearing, was represented by counsel, and was given an opportunity to speak and ask questions.  (*See id.* at 50-87.)  Sinanan's counsel, Defendant Wiltraut, and the

---

[10] Sinanan's § 1983 claims against Defendants Gibet and Jones are not plausible and will be dismissed because he has failed to allege the personal involvement of these Defendants in the alleged constitutional violations.  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved") (citation omitted); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (a supervisory defendant must have had at least "contemporaneous, personal knowledge" of the alleged violation).  Rather than allege specific conduct by them, Sinanan merely alleges that Defendants Gibet and Jones were among a list of defendants who "denied the plaintiff and BC contact for over 218 [sic] without probable cause." (*See* Am. Compl. at 16.)

[11] During the June 20, 2023 hearing, Sinanan reported that he had been sentenced to eleven to twenty-two years.  (Am. Compl. at 107.)  Additionally, counsel for the agency reported that the assessment revealed that there had been no contact between Sinanan and B.C. for nearly eight years prior to the initiation of the dependency proceedings.  (*Id.* at 111.)

hearing officer each reported on their attempts to call Sinanan prior to the hearing, but none were able to reach him at the prison.  (*Id.* at 53, 65-66, 70.)  When Defendant Wiltraut could not reach Sinanan by phone, she mailed the agency's paperwork to him.  (*Id.* at 66.)  The hearing officer explained to Sinanan that he would be able to provide names of "family members, family friends, past neighbors, whoever has an interest in [B.C.] that might be able to be a support for her." (*Id.* at 54, 70, 85.)  Because he is incarcerated, Sinanan was ineligible to have B.C. in his custody.  (*Id.* at 55-56.)

At the June 20, 2023 hearing, Judge Sletvold addressed the several motions that had been filed by Sinanan.  (*Id.* at 89-127.)  Although he requested that advanced communication technology be used for the hearing, Judge Sletvold explained that the Department of Corrections ("DOC") had not made that available, thus his option was to participate by telephone if he chose to do so.  (*Id.* at 91-93.)  Judge Sletvold granted Sinanan's motion to proceed *pro se.*  (*Id.* at 94-97, 101.)  The court also granted Sinanan's motion for the proceedings to be heard before a judge, rather than a hearing officer, as well as his motion to obtain the transcript of the March 30, 2023 hearing.  (*Id.* at 102-04.)  However, the court denied Sinanan's motion for a re-hearing on the dependency adjudication.  (*Id.* at 104.)  When Sinanan suggested Carmen Gonzalez as a potential resource for B.C., Judge Sletvold indicated that she would ask CY&F to examine her as a potential resource. (*Id.* at 108.)  Sinanan had already informed CY&F that his mother could be a potential resource for B.C.  (*Id.* at 109-10.)  Indeed, counsel for the agency reported that B.C. already had engaged in visitation with her grandmother, Sinanan's mother.  (*Id.* at 118.)  Sinanan's mother was determined to be an appropriate resource for B.C. and permission was sought for her to take B.C. to Georgia for two weeks.  (*Id.* at 119.)  The agency recommended approval for the trip and Sinanan expressed his approval.  (*Id.* at 120.)  Upon questioning from Sinanan, agency counsel indicated that the agency continued to evaluate Carmen Gonzalez, who is Sinanan's girlfriend, as a

qualifying resource for B.C. (*Id.*) Sinanan explained his difficulty in receiving mail from CY&F, and Judge Sletvold indicated that she would direct CY&F to follow DOC procedures. (*Id.* at 110.) Counsel for the agency also reported that Sinanan unsuccessfully attempted to reach B.C. by phone, but the agency was working to establish a regular schedule for phone calls between them. (*Id.* at 112, 125.)

Sinanan participated in the August 3, 2023 hearing by videoconference. (*Id.* at 129-57.) At that time, B.C. had been placed with a foster family because she was no longer able to live with her godmother. (*Id.* at 132.) The agency was working to identify another potential resource, a paternal great-aunt who lived in Las Vegas, and continued to perform a home study for Carmen Gonzalez. (*Id.*) The agency also reported that it was working with SCI Albion to begin video visits for Sinanan and B.C. (*Id.* at 140.) In response to Sinanan's assertion that he had been denied contact with B.C. since the commencement of the dependency proceedings, Judge Sletvold explained that Sinanan was allowed to have contact with B.C., and that the agency was "working that out with the prison." (*Id.* at 142.) The court reiterated that it had not denied contact between Sinanan and B.C. and confirmed that the contact between Sinanan and B.C. would be supervised. (*Id.* at 143.) The court also sought to address a motion that Sinanan had filed with the state court regarding alleged violations of his due process rights. (*Id.* at 149-51.) Sinanan once again reported that he continued to receive notifications that mail from the agency to him was returned to sender. (*Id.* at 153-56.) Judge Sletvold again instructed the agency to follow proper DOC mail procedures. (*Id.* at 156.)[12]

---

[12] Sinanan also attached to the Amended Complaint a copy of a December 14, 2023 court order that appears to continue the adjudication of dependency for B.C. and direct that she remain in foster care. (Am. Compl. at 166.)

Sinanan's allegations and the documents he attached to his Amended Complaint make clear that he was given notice of the hearings, and was given an opportunity to ask questions and contribute to the process. He has been afforded significant process throughout the dependency proceedings. Additionally, the conduct of the CY&F employees and other individuals involved in the dependency proceedings is not "conscience-shocking" in a manner that would give rise to a claim. Sinanan appears displeased with the way dependency proceedings played out, and perhaps the speed with which the process moved, but he has not plausibly alleged a due process claim. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 126, (1990) (a due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process").

### E.    Claims against Northampton County CY&F

Sinanan names CY&F as a Defendant, which is treated as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). *See Hatfield v. Berube*, 714 F. App'x 99, 103 n.1 (3d Cir. 2017) (noting "Pennsylvania county offices of children and youth are treated as municipalities for purposes of *Monell*") (citing *Mulholland*, 706 F.3d at 237). Municipal liability cannot be predicated on a *respondeat superior* basis. *Monell*, 463 U.S. at 691. Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). A county may only be sued under § 1983 where its own policies or customs cause constitutional injury. *Monell*, 436 U.S. at 694. Bald allegations of the existence of a policy are not enough to establish the county's liability; there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 386 (1989).

Thus, to allege a plausible *Monell* claim against CY&F, Sinanan must allege that the violation of his rights was caused either by a policy or by a custom of Northampton County.  *See Monell*, 436 U.S. at 694.  He simply has not done so.  There are no allegations in the Amended Complaint to support a conclusion that Sinanan's constitutional rights were violated as a result of a county policy or custom, and that a county policy or custom caused the harm of which Sinanan complains.  *See Mulholland*, 706 F.3d at 237 (affirming dismissal of *Monell* claim for failing to plead that a custom or policy that caused a constitutional violation); *see also Miller v. Off. of Child., Youth & Fams. of Allegheny Cnty.*, 605 F. App'x 99, 102 (3d Cir. 2015) (affirming dismissal of claim against agency because plaintiff failed to allege the deprivation of his rights resulted from any official policy or custom of the agency); *Randolph v. Turgeon*, No. 21-316, 2022 WL 22209559, at *5 (M.D. Pa. May 5, 2022) (dismissing *Monell* claim for failure to plead that a custom or policy infringed on her rights), *report and recommendation adopted*, No. 21-316, 2022 WL 22001377 (M.D. Pa. June 9, 2022).  Accordingly, Sinanan's claims against CY&F will be dismissed for failure to state a claim.

## IV.  CONCLUSION

For the reasons stated, the Amended Complaint will be dismissed with prejudice in its entirety pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915A(b)(2).  Leave to amend will not be given as any attempt to amend would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  An appropriate Order follows, which dismisses this case.

**BY THE COURT:**

**  /s/ Juan R. Sánchez**
**Juan R. Sánchez, C.J.**